UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | : <br> :    1:06-cv-00959 (RJL) |
| v. | : <br> : |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | : <br> : <br> : |
| Defendant. | : <br> : |

**UNOPPOSED MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR CREATION OF A FAIR FUND, APPROVAL OF A DISTRIBUTION PLAN, AND APPOINTMENT OF A DISTRIBUTION AGENT**

Plaintiff, Securities and Exchange Commission, hereby moves this honorable Court for an Order: (i) authorizing the Commission to create a Fair Fund; (ii) approving the Commission's plan to distribute the Fair Fund; (iii) appointing Rust Consulting, Inc., as Distribution Agent; and (iv) directing the Clerk of the Court to transfer the Fair Fund to Rust Consulting for distribution. Defendant Federal National Mortgage Association does not oppose this motion. The motion is supported by the memorandum of law filed herewith, the proposed distribution plan, and the declarations of Gerald B. Lumer and James F. Blayney, and the exhibits attached thereto. A proposed Order is also submitted with this motion.

Dated:  April 9, 2007                    Respectfully submitted,


                                               /s/ Jordan A. Thomas
                                               Jordan A. Thomas (Bar No. 452886)
                                               Peter H. Bresnan
                                               Christopher Conte
                                               Charles E. Cain
                                               Margaret S. McGuire
                                               Rachel E. Schwartz


                                               SECURITIES AND EXCHANGE COMMISSION
                                               Division of Enforcement
                                               100 F Street, N.E., Mail Stop #4030
                                               Washington, DC 20549
                                               Tel.: (202) 551-4475 (Thomas)
                                               Fax.: (202) 772-9245 (Thomas)

                                               Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | : <br> : 1:06-cv-00959 (RJL) |
| v. | : <br> : |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | : <br> : <br> : |
| Defendant. | : <br> : |

**MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION BY PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION FOR CREATION OF A FAIR FUND, APPROVAL OF A
DISTRIBUTION PLAN, AND APPOINTMENT OF A DISTRIBUTION AGENT**

Plaintiff, Securities and Exchange Commission, submits this memorandum of law in support of its unopposed motion for an order: (i) authorizing the Commission to create a distribution fund for the approximately $350 million currently being held in the Court's registry ("Fair Fund"); (ii) approving the Commission's plan to distribute the Fair Fund ("Distribution Plan"); (iii) appointing Rust Consulting, Inc., as Distribution Agent; and (iv) directing the Clerk of the Court to transfer the Fair Fund to Rust Consulting for distribution in accordance with the Distribution Plan.[1]

**I.   BACKGROUND**

On May 23, 2006, the Commission filed its original action in this matter against Defendant Federal National Mortgage Association ("Fannie Mae"), alleging various violations of the federal securities laws. On August 4, 2006, the Court entered Final

---

[1] Although the Federal National Mortgage Association does not oppose this distribution plan, the company does not adopt the characterizations of the events at issue; nor does the company adopt in every respect the methodologies applied to determine the recognized loss.

Judgment as to Fannie Mae pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Consistent with the terms of the Final Judgment, on August 10, 2006, Fannie Mae paid a total of $ 350,000,001 of disgorgement and civil penalty to the Clerk of this Court. By making this payment, Fannie Mae relinquished all legal and equitable right, title, and interest in such funds. The funds were thereafter deposited in an interest bearing account, account number #214936, under the case name designation "*SEC v. Federal National Mortgage Association.*"

By order dated November 1, 2006, the Court appointed Damasco & Associates to fulfill the tax obligations of the Fair Fund. The Fair Fund constitutes a Qualified Settlement Fund under section 468B(g) of the Internal Revenue Code, 26 U.S.C. § 468B(g), and related regulations, 26 C.F.R. §§ 1.468B-1 through 1.468B-5. Accordingly, pursuant to the Court's Order, the Tax Administrator is required to pay taxes in a manner consistent with treatment of the Fair Fund as a Qualified Settlement Fund, and is to be compensated for the tax services provided.

The Final Judgment further provided, in Section V, that the Commission could propose a distribution agent and a plan to distribute the funds, in accordance with the Fair Funds provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.

## II.    ARGUMENT

### A.    The Court Should Create A Fair Fund

The Commission seeks an order distributing to defrauded investors the funds paid by Fannie Mae and any other Defendants in related actions to purchasers of Fannie Mae common and preferred stock between January 14, 1999 and December 22, 2004, in satisfaction of their Final Judgments. Pursuant to Section 308 of the Sarbanes-Oxley Act

of 2002 ("SOX"), 15 U.S.C. § 7246 – the so-called "Fair Fund" provision of SOX – the Commission seeks to include in the Fair Fund the disgorgement, interest and civil penalties paid by Fannie Mae and any other Defendants in related actions. Section 308(a) of SOX provides:

> If in any judicial or administrative action brought by the Commission under the securities laws . . . the Commission obtains an order requiring disgorgement against any person for a violation of such laws . . . ., or such person agrees in settlement of any such action to such disgorgement, and the Commission also obtains pursuant to such laws a civil penalty against such person, the amount of such civil penalty shall, on the motion or at the direction of the Commission, be added to and become part of the disgorgement fund for the benefit of the victims of such violation.

The Commission brought this action under the securities laws and Fannie Mae paid disgorgement and a penalty as part of its settlement. Accordingly, the requirements of SOX Section 308(a) and (b) have been satisfied. Furthermore, permitting civil penalties paid by Fannie Mae and any other Defendants in related actions, to be aggregated with the available disgorgement funds will permit the Commission to return more money to investors, consistent with the purpose of the Fair Fund provision.[2] The Commission therefore requests that the Court approve the creation of a Fair Fund, which shall include the payments made by Fannie Mae and any other Defendants in related actions.

      B.     **The Court Should Approve The Commission's Distribution Plan**[3]

The Court has broad discretion in fashioning relief and protective measures in Commission actions. *Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC,* 467 F.3d 73, 81 (2d Cir. 2006)(quoting *SEC v. Fishbach Corp.,* 133 F.3d 170, 175

---

[2] Before enactment of the Fair Fund provisions, civil penalties were required to be paid to the United States Treasury. *See* Section 21(d)(3)(C)(I) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(3)(C)(I).
[3] A copy of the proposed distribution plan has been filed with this motion.

(2d Cir. 1997)); *In re San Vicente Medical Partners, Ltd.*, 962 F.2d 1402, 1406 (9th Cir. 1992). This broad discretion extends to consideration and approval of a plan of distribution.

When crafting any distribution plan, the Commission necessarily has to draw lines among potential claimants, as it is the rare case in which the amount recovered by disgorgement or (now) by a penalty could compensate all investors' losses. In recognition of the difficulty of the task, among other things, courts give the Commission significant discretion to set the parameters of a distribution plan. *Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC,* 467 F.3d at 82 (quoting *SEC v. Wang*, 944 F.2d 80, 87-88 (2d Cir. 1991)). Accordingly, the Court's review of the Commission's Distribution Plan is limited to whether the plan is fair and reasonable. *Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC,* 467 F.3d at 81 (holding that the "fair and reasonable" standard of review is appropriate for Fair Fund distribution plans); *Wang,* 944 F.2d at 85 ("once the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end").

The fact that a distribution plan excludes certain potential claimants or limits certain losses does not render a proposed plan inequitable, as long as there is a reasonable basis for the underlying decisions. For example, in *Wang*, the Second Circuit affirmed the district court's rejection of challenges to a SEC distribution plan by option traders who contended that the plan both unfairly excluded some option traders and also unfairly limited the recovery of others. After noting that the choices made by the Commission in designing the plan were reasonable in that they, among other things, conserved the

4

limited pool of funds to distribute to investors by minimizing administrative expenses that would be incurred by making other choices, the Second Circuit underscored the deference given to the inevitable line-drawing the SEC must make in nearly every distribution plan:

> "As [appellant] concedes, had the Commission chosen to expand the definition [of eligible claims], the costs of administration would have increased because the SEC would have been required to process a greater number of claims, and the pool of money available for distribution to victims would have been reduced . . . It is important to keep in mind though that the primary purpose of disgorgement is not to compensate investors . . . but to ensure that those guilty of securities fraud are not unjustly enriched.  <u>This kind of line-drawing – which inevitably leaves out some potential claimants – is, unless commanded otherwise by the terms of a consent decree, appropriately left to the expertise of the SEC in the first instance</u>."

*Wang*, 944 F.2d at 87-88 (emphasis supplied); *accord SEC v. Levine*, 881 F.2d 1165, 1182 (2d Cir. 1989) (under consent judgments, SEC had primary authority to determine eligibility of claimants under disgorgement distribution plan); *SEC v. Scherer*, No. 92 Civ 6300 WK, 1996 WL 689350 (S.D.N.Y. Nov. 29, 1996) ("[T]he Commission has discretion in fashioning distribution plans like the disgorgement fund in this case"); *SEC v. Finacor Anstalt,* No. 90 Civ 7667 (JMC)**,** 1991 WL 173327 (S.D.N.Y. Aug. 29**,** 1991) (rejecting challenge to SEC's proposed disgorgement distribution plan; holding that the "equities weigh in favor of limiting payment at this time to the claimants suffering the greatest injury").

The Commission submits that its Distribution Plan is both fair and reasonable.[4] The Commission seeks approval of its proposed Distribution Plan for victims who suffered losses during the "Recovery Period" – January 14, 1999 through the close of

---

[4] A declaration of Gerald B. Lumer, dated March 28, 2007 ("Lumer ¶ ___"), which outlines the methods used to estimate damages and the development, fairness and reasonableness of the proposed distribution plan, has been filed with this motion.

5

markets on December 22, 2004.  In light of the fact that the Fair Fund cannot fully compensate all shareholder losses, the Distribution Plan's guiding principle is to attempt to distribute the limited funds available to those shareholders with the greatest losses resulting from the fraud.  Specifically, the Commission has formulated a plan of distribution that includes all common shareholders and Class N preferred shareholders during the Recovery Period.  Using the best information available, it appears the majority of investors' losses occurred in these securities and the Fair Fund can be easily distributed to these shareholders.  Lumer ¶ 9.  For each victim, the proposed Order would simply direct the Distribution Agent to make an appropriate pro-rata distribution.  Lumer ¶ 20.

On the other hand, the Distribution Plan reasonably excludes all other classes of preferred shareholders because there was no statistically significant price reaction to the corrective disclosures made by Fannie Mae.  Lumer ¶ 10.  All bond holders were also excluded because Fannie Mae's bonds were numerous and the vast majority of the trading in these bonds was not reported, making it impossible for the Commission to reasonably estimate the effect of the alleged fraud on the specific bonds.  Lumer ¶ 9.  Accordingly, a distribution to these investors is both impracticable and undesirable.  *See Fischbach Corp.*, 133 F.3d 170 (plan may engage in "line-drawing[,] which inevitably leaves out some potential claimants"); *Levine*, 881 F.2d 1165 (distribution plan can "decide that certain groups of claimants would receive payments and others would not"); *SEC v. Lorin*, 869 F. Supp. 1117, 1129 (S.D.N.Y. 1994) (distribution not required; impracticable "where numerous victims suffered relatively small amounts [or] where the victims cannot be identified").  The Distribution Plan also appropriately excludes all

those who were responsible for the alleged fraud or were in a position to detect or prevent the fraud.

Finally, the Commission recommends that Rust Consulting be excused from any requirement to post a bond because the expense of posting such a bond would reduce the amount distributed to investors and would not likely provide much additional protection.[5] *See SEC v. Universal Financial*, 760 F.2d 1034, 1039 (9th Cir. 1985) (affirming District Court's decision not to require receiver to post a bond, as the main effect would be to deplete further the resources available to investors and others with an interest in the receivership estate). In lieu of bond, Citizens Financial Group ("Citizens Bank"), the financial institution that will hold the Fair Fund assets for Rust Consulting, prior to distribution, maintains a Financial Institutions Bond including errors and omission coverage with an aggregate limit of 365 million British pounds, which at current exchange rates is equivalent to approximately $700 million. Blayney ¶ 7. Furthermore, Rust Consulting maintains and will continue to maintain, until termination of the Fair Fund, professional liability insurance is in the amount of $10 million. Blayney ¶ 6. The firm will also maintain a crime policy in the amount of $5 million per occurrence which provides protection against employee dishonesty, forgery or theft, disappearance or destruction, and electronic and computer crime exposures, which include losses due to transfer, payment or delivery of funds as a result of fraudulent input, preparation or modification of computer instructions, data or fraudulent electronic transmissions or communications. Blayney ¶ 6. Lastly, Rust Consulting maintains comprehensive

---

[5] A declaration of James F. Blayney, dated March 13, 2007 ("Blayney ¶ ___"), the President of Rust Consulting, has been filed with this motion.

7

security processes and procedures that are designed to safeguard settlement fund assets. Blayney ¶ 5.

For the foregoing reasons, the Distribution Plan should be approved because it would compensate those investors most affected by the charged misconduct and exclude those that who may have been responsible for the alleged fraud or those whose losses could not be reliably calculated, in a cost-effective manner that is both fair and reasonable.

### C. The Court Should Appoint Rust Consulting As Distribution Agent

The selection of the Distribution Agent in this case is critically important. The Commission believes that the Distribution Agent will face substantial challenges. As a preliminary matter, the Commission expects that the Distribution Agent will discover that thousands of investors realized losses in the billions of dollars. The Distribution Agent will need to carry out the detailed process of actually returning the Fair Fund to claimants, as is typically done in class action cases. To determine the identities of investors and amounts lost, the Distribution Agent will be required to establish a substantial claims process, including identifying apparent investors from brokerage and other records, mailing claim forms to apparent investors, reviewing and classifying claims, and fielding calls and inquiries from investors.

Because of the complexity and scale of the Distributions Agent's task in this case, the Commission solicited proposals from a number of highly-qualified claims administrators from around the country. Each candidate was asked to provide a written proposal that provided certain key information, including, but not limited to: (i) a general description of the steps the firm would take to identify eligible claimants and distribute

8

the funds; (ii) the firm's best estimate as to the costs of the distribution, in total and itemized in the following areas: legal services, gathering and analyzing investor data, notice to claimants, processing of the claims, distribution of funds to approved claimants, periodic reports, and any other significant expenses; (iii) the firm's experience in handling distributions of this size and complexity; (iv) the firm's present capacity to take on a distribution of this nature; (v) an estimate for how long it would take for the firm to complete the distribution process; and (vi) an opportunity to provide any other relevant information that the firm believed we should consider in selecting a distribution agent. These solicitations ultimately yielded written submissions from six potential distribution agents.

After carefully reviewing these written proposals, conducting an extensive interview, and checking numerous public and private references, the Commission selected Rust Consulting as the best candidate to serve as the Distribution Agent in this case. Rust Consulting was founded in 1995 and provides a variety of services to clients including direct mail notification, published media campaigns, telephone support services, claims processing, and award distributions. The firm has provided claims administration services for over 1,000 class action settlements. In addition, over the years, the firm has skillfully handled countless large and complex distributions, in securities cases, including many for the Commission. The firm has paid out over $2 billion in settlement assets.

Rust Consulting has substantial resources, including more than 500 personnel, advanced data processing capabilities and the capacity to field investor questions on over 1,000 lines. Due to its experience and size, the firm has the ability to process large

9

distributions, like the one in the Fannie Mae case, in an efficient manner that saves both time and resources.  Commission staff and Rust Consulting have worked closely to develop a comprehensive and aggressive distribution plan for identifying and compensating injured investors in a timely manner that maximizes available funds.  If appointed by this Court, Rust Consulting has agreed to distribute the settlement funds to injured investors in less than six months, at highly competitive rates.

For the foregoing reasons, the Commission respectfully recommends that the Court appoint Rust Consulting as Distribution Agent for the Fair Fund.

## III.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its motion for an Order:  (i) authorizing the Commission to create a Fair Fund; (ii) approving the Commission's Distribution Plan; (iii) appointing Rust Consulting, Inc., as Distribution Agent; and (iv) directing the Clerk of the Court to transfer the Fair Fund to Rust Consulting for distribution in accordance with the Distribution Plan.

Dated:  April 9, 2007                      Respectfully submitted,

/s/ Jordan A. Thomas
Jordan A. Thomas (Bar No. 452886)
Peter H. Bresnan
Christopher Conte
Charles E. Cain
Margaret S. McGuire
Rachel E. Schwartz

SECURITIES AND EXCHANGE COMMISSION
Division of Enforcement
100 F Street, N.E., Mail Stop #4030
Washington, DC 20549
Tel.: (202) 551-4475 (Thomas)
Fax.: (202) 772-9245 (Thomas)
Attorneys for Plaintiff